MARY C. MARSHALL REALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56358.   Promulgated October 31, 1933.

*Abraham Lowenhaupt, Esq.*, and *Stanley S. Waite, Esq.*, for the petitioner.

*George D. Brabson, Esq.*, for the respondent.

### OPINION.

TRAMMELL: This proceeding is for the redetermination of a deficiency in income tax of $8,371.02 for 1927.   The only matter in controversy is the correctness of the respondent's action in including in taxable income the amount of $59,596.91 as representing profit realized from the sale of real estate.

The petitioner is a Missouri corporation, organized in 1907, and has its office at St. Louis.   Although empowered by its charter to engage in the real estate business generally, it was organized primarily to hold and manage the real estate belonging to the estate of Mary C. Marshall, who had died in 1905.   From time to time the petitioner sold some of the real estate which had been transferred to it from the estate.   It never bought or dealt in other real estate nor held any in connection with any other person.   The corporation was regarded as a family affair and its business was conducted very informally.   No stockholders' or directors' meetings were held between April 15, 1918, and April 16, 1927.

The capital stock of the petitioner consisting of 500 shares was held as follows during the year 1927:

| | Shares |
|---|---|
| John D. Marshall | 125 |
| Merritt H. Marshall | 125 |
| Cora B. Pullis | 125 |
| Collier M. Berry | 62½ |
| Leslie W. Berry | 62½ |

During 1927 and until his death in 1928 John D. Marshall was president of the petitioner.   Collier M. Berry was elected treasurer in 1927.   Merritt H. Marshall was secretary in 1927 and had held that office since 1907.

For a number of years John D. Marshall was the stockholder most active in the management of the corporation's business.   The other stockholders permitted him to negotiate sales and to confer with them separately and informally respecting their consent thereto.   After Collier M. Berry was elected treasurer in 1927 he began to take an active interest in the sale of certain of the corporation's property.

About October 1926 John D. Marshall, president of the petitioner, advised William M. Stites, a real estate agent through whom the petitioner had previously sold several pieces of property, that certain property of the petitioner known as the Marshall Building, situated in Maplewood, Missouri, was for sale and asked Stites to obtain an offer from a purchaser. In April 1927 Stites obtained such an offer from one Aufrichtig, representing the Lesser Goldman Cotton Co., to purchase the building for $132,500 cash. A contract of sale combined with a receipt for $10,000 earnest money made out in the name of the petitioner was submitted to John D. Marshall. This receipt was returned to Stites on June 24, 1927, approved and signed by John D. Marshall, as president, and C. M. Berry, as treasurer, for the petitioner. Between August 1914 and January 1927 Stites had acted for the corporation in making all its sales and had sold several pieces of real estate. When the contract and receipt for earnest money was signed on June 24, 1927, he believed he was acting for the petitioner. On all previous sales the documents had been signed by John D. Marshall as president and Merritt H. Marshall as secretary of the petitioner.

On the same date the contract of sale and receipt for earnest money was executed a statement of rentals and expenditures with respect to the Marshall Building was executed in the name of the petitioner, John D. Marshall signing as president and C. M. Berry as treasurer. Also on the same date John D. Marshall, signing as president of the petitioner, and C. M. Berry, as treasurer, executed an instrument with Aufrichtig whereby Aufrichtig granted to the petitioner an easement in one of the walls of the Marshall Building for the benefit of an adjoining building owned by petitioner.

Some time between June 24, 1927, and August 1, 1927, Collier M. Berry consulted one Wilson, an attorney, " to see that this thing was put through in a proper manner " and to see if the transaction might be handled in some manner so as to save the petitioner taxes. Wilson advised him that this could be done by having the petitioner distribute the property in question to the stockholders as a dividend in kind, then place the property in the hands of a trustee, who then could pass title to the purchaser. Acting upon the advice of Wilson a special joint meeting of the stockholders and directors, who were the same persons, was held on August 1, 1927, at which time a resolution was adopted purporting to distribute to the stockholders the Marshall Building, subject to a first and a second trust, and as a dividend in kind, their interests therein to be in proportion to their stockholdings in the petitioner. Upon request of the stockholders the petitioner on August 1, 1927, executed a deed to the Marshall Building to Collier M. Berry, who on the same date executed with

respect thereto a declaration of trust in favor of the respective stockholders and an agreement with them whereby they empowered him to sell and convey the property for $132,500 within 90 days from date.

The dividend was recorded in the petitioner's journal by the following entry:

1927
Aug. 3. Surplus _____ $20,476.14
    Bills Pay #41_____ 5,000.00
    Bills Pay #46_____ 23,000.00
    Bills Pay #53_____ 10,000.00
    Bills Pay #56_____ 11,386.43
    Bills Pay #57_____ 5,211.43
      To Maplewood Real Estate_____ $75,074.00
      To record dividend in kind of this date.

The attorney for the Lesser Goldman Cotton Co., in making his examination of the title to the Marshall Building, found it to be in the name of Collier M. Berry, who held it for the benefit of himself and the other stockholders of the petitioner as their respective interests might appear. The attorney also found that the east wall of the building was seven or eight inches over on property still held by the petitioner and which was not included in the deed to Collier M. Berry. Under these circumstances the attorney refused to approve the title unless the petitioner gave the purchaser an easement in the other property with respect to the wall and unless all the stockholders and their respective husbands or wives joined in the deed. A special joint meeting of the stockholders and directors of the petitioner was held on August 5, 1927, at which time the officers of the petitioner were empowered to join with the stockholders in the execution of a general warranty deed conveying the Marshall Building to the purchaser and granting the easement desired. Thereupon on the same date the stockholders of the petitioner and their respective spouses and the petitioner, by its president and secretary, executed a general warranty deed to the Marshall Building, together with the easement referred to above. While Collier M. Berry signed the deed, he did not purport to do so in his capacity as trustee for the other stockholders, nor was the deed signed by anyone as trustee.

The earnest money receipt having provided that the amount paid in connection therewith should constitute a part of the purchase money, a cashier's check dated August 10, 1927, for $121,239.34 and drawn to the order of the attorney for the purchaser was endorsed by him over to the order of Collier M. Berry, who in turn endorsed it and delivered it to the Stites Realty Co., which used part of the

proceeds thereof for the payment of certain deeds of trust or mortgages outstanding on the Marshall Building and in payment of certain expenses and turned the balance back to Berry. Berry thereupon opened an account in a bank in Maplewood in his name as trustee and issued checks against it to each of the stockholders for the amount finally ascertained to be due them. This brought the transaction to a close. Certain expenses paid by the purchaser, plus the earnest money and the amount of the cashier's check, all totaling $132,500, constituted the consideration paid by the purchaser for the property.

In its income tax return for 1927 the petitioner made no reference to the sale of the Marshall Building with the exception that the balance sheet at the end of the year showed building and land at $81,316.25 less than at the beginning of the year.

In determining the deficiency here involved the respondent included in the petitioner's taxable income the amount of $59,596.91 as a profit realized by it on the sale of the Marshall Building.

The petitioner contends that the earnest money receipt and contract of sale executed by its president and treasurer on June 24, 1927, was a nullity so far as the petitioner was concerned because it was neither authorized nor approved by petitioner's directors or stockholders; that the fact that it joined in the deed with the stockholders and their wives does not establish a sale of the property by the petitioner; that the petitioner's action in conveying the property to a trustee for its stockholders pursuant to the resolution adopted at the special joint meeting of the stockholders and directors on August 1, 1927, effectually transferred from the petitioner any title or interest in the property and therefore it could not have derived any profit from the sale of the property. The respondent contends that the sale negotiated on behalf of the petitioner by its president and treasurer, as evidenced by the earnest money receipt and contract of sale executed on June 24, 1927, was carried out in accordance with its original terms and was consummated by the execution of a deed by the corporation and stockholders on August 5, 1927; that the intermediate transaction conveying the property to C. M. Berry as trustee was merely a device or subterfuge indulged in in an attempt to avoid taxation and did not affect the terms and conditions of the original contract of sale and that the sale was in effect one by the petitioner, which is subject to tax on the profits therefrom. There is no controversy between the parties as to the correctness of the amount of the profit from the transaction as computed by the respondent, the controversy being only as to whether the petitioner is taxable on such profit.

The burden of a great deal of the petitioner's argument, as well as some of its evidence, is to the effect that under its bylaws neither its president nor its treasurer had any authority to execute the earnest money receipt and contract of sale executed by them on June 24, 1927; that when they (the president and treasurer) discovered that a large income tax would result from the sale of the property by the petitioner they conferred with counsel and sought a means of avoiding such tax and, without letting the other stockholders know that the instrument of June 24, 1927, had been executed and the earnest money paid pursuant thereto, they permitted the adoption of the resolution of August 1, 1927, distributing the property to the stockholders in kind; that this action and resolution were bona fide in every respect and that the property in question was on that date effectively transferred from the petitioner to the stockholders. The petitioner further urges that the stockholders never ratified or approved the action of its president and treasurer in executing the instrument of June 24, 1927.

While three of the stockholders, Merritt H. Marshall, Cora B. Pullis and Leslie W. Berry, testified as to having no knowledge prior to or on August 1, 1927, of the contract of sale, the payment of the earnest money and the earnest money receipt executed on June 24, 1927, they testified as to knowing prior to August 1 that a sale was pending with respect to the property and that the purpose of the meeting was to consider matters relating thereto. There is some other testimony indicating that Leslie W. Berry was aware of all that had been done. Cora B. Pullis testified that Merritt H. Marshall, secretary of the petitioner, in advising her that the meeting was to be held, informed her that the object of it was to declare the property as a dividend to the stockholders. The record also shows that attorneys were present at the meeting and explained to the stockholders and directors that if the transaction were handled as originally planned—that is, by the petitioner making the sale and deed directly to the purchaser or its agent—there would be an income tax to be paid by petitioner, but that if the property were first distributed as a dividend and the sale and deed not made directly by the petitioner, there would be no tax to it. The record also clearly shows that the stockholders all knew that the meeting on August 1, 1927, was for the purpose of attempting to handle the property in such a way as to reduce the taxes to the petitioner. Most, if not all, of the stockholders knew prior to August 1 that the selling price of $132,500 for the property had been agreed upon. The purchaser through its agent acquired title to the property upon final payment of the consideration agreed upon in the instrument

of June 24, 1927. While none of the stockholders and directors other than John D. Marshall and Collier M. Berry may have known on August 1 or August 5, 1927, of the execution of the instrument of June 24 and the payment of the earnest money, there is nothing in the record to indicate that when they did learn of these facts they took any steps to repudiate the agreement or to have the execution of the deed to the property set aside or that they in any wise proceeded against John D. Marshall and Collier M. Berry for failing to disclose such information to them prior to the execution of the deed. Considering the foregoing and the other facts in the case in connection with the fact that the purchaser acquired title to the property within the time, and for the consideration specified in the contract of sale and receipt for purchase money of June 24, 1927, we are unable to conclude that the roundabout method selected for transferring title to the purchaser operated to relieve petitioner of the tax on the income from the sale of the property. The petitioner lays much stress on the action taken at the joint meeting of the stockholders and directors on August 1, 1927, in distributing the property to the stockholders and thereby divesting petitioner of all interest therein. While the resolution purporting to declare the distribution indicates that such distribution was to be from the petitioner's surplus, there is nothing to indicate that the stockholders of petitioner considered or treated such distribution as a part of their income. So far as the record discloses the matter was handled by them as if they were a mere conduit, as contended by respondent, through which the title passed from the petitioner to the purchaser. The record is clear that the only purpose for which the property was transferred out of the petitioner's name was to start it on its way to the purchaser or its agent. Had the instrument of June 24, 1927, not been executed, there is nothing in the record to indicate that any attempt to distribute the property to the stockholders would have been made either in 1927 or at any other time. The purported distribution of the property was, in our opinion nothing but an attempt on the part of the stockholders and directors, a majority of whom were no doubt fully acquainted with the situation, to avoid the consequence of the acts of its president and treasurer in entering into the contract of sale and accepting the earnest money in connection therewith. The respondent has included the profit from the sale of the property in the taxable income of the petitioner. From the facts before us we are unable to hold that he erred in so doing. Cf. *James Duggan*, 18 B.T.A. 608; *Nace Realty Co.*, 28 B.T.A. 467; *Liberty Service Corp.*, 28 B.T.A. 1066.

*Judgment will be entered for the respondent.*